UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| OSCOMP SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12 -11010-JGD |
| BAKKEN EXPRESS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION AND ORDER ON PLAINTIFF'S MOTION TO REMAND AND ON DEFENDANT'S MOTION TO TRANSFER

March 12, 2013

DEIN, U.S.M.J.

## I.  INTRODUCTION

This action arises out of two purchase order agreements (the "Contracts") under which the plaintiff, OsComp Systems, Inc. ("OsComp"), agreed to provide equipment and services to the defendant, Bakken Express, LLC ("Bakken"), for use in connection with Bakken's efforts to extract natural gas in North Dakota.  By its complaint, OsComp is seeking damages for breach of contract and alleged violations of Mass. Gen. Laws ch. 93A, as well as an order directing Bakken to return certain equipment to the plaintiff and to comply with the confidentiality provisions of the parties' Contracts.  OsComp initially filed this action in Middlesex Superior Court on March 7, 2012.  On June 6, 2012, Bakken removed the case to federal court based on diversity of citizenship.

The matter is presently before this court on OsComp's "Motion to Remand Action to State Court" (Docket No. 6) and on Bakken's "Motion to Transfer Pursuant to 28 U.S.C. 1404(a)" (Docket No. 10).  In support of its motion, OsComp argues that Bakken waived its right of removal, pursuant to the terms of a venue selection clause contained in the parties' Contracts, which provides in relevant part that Bakken "hereby agrees . . . to accept venue in the courts of Middlesex County, Massachusetts."  It contends that as a result of the defendant's waiver, the matter must be remanded to the Middlesex Superior Court.  Bakken disputes that the venue selection provision is mandatory or that it other-wise precludes venue in this court.  It further maintains that under state law, venue is only proper in Suffolk County where this court sits, and that a remand to Middlesex Superior Court would not be appropriate.

By its motion to transfer, Bakken argues that the convenience of the parties and witnesses, as well as the interests of justice, would best be served if this action were tried in Texas, where Bakken already is pursuing a lawsuit against OsComp in state court. Accordingly, Bakken requests that this court transfer the matter to the United States District Court for the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). OsComp disputes that a transfer to Texas would be convenient or just, particularly in light of the parties' forum selection clause and the fact that Bakken concealed its Texas lawsuit from OsComp until after the instant case was filed, and it urges this court to defer to the plaintiff's choice of venue.

For all the reasons described below, this court finds that Bakken's agreement to accept venue in the courts of Middlesex County, Massachusetts does not constitute a waiver of its right to remove this matter to federal court and does not warrant a remand of the litigation to the state superior court. This court further finds that Bakken's state court action in Texas is irrelevant to the transfer analysis, and that the interests of convenience and justice would best be served by keeping OsComp's action in Masachusetts. Accordingly, and for all the reasons set forth herein, both of the parties' motions are DENIED.

## II.  STATEMENT OF FACTS[1]

### The Parties

The plaintiff, OsComp, is a Delaware corporation which is engaged in the business of developing and commercializing technologies and equipment for use in extracting and compressing natural gas. (Compl. ¶ 1; Santos Aff. ¶ 2). At the time the parties negotiated the Contracts at issue in this case, OsComp's principal place of business was in Cambridge, Massachusetts. (Santos Aff. ¶ 21). Since that time, however, the plaintiff has moved its principal place of business to Boston, Massachusetts. (Id.).

---

[1]  The facts are derived from the following: (1) the Complaint ("Compl."), which is attached at Exhibit 1 to the plaintiff's Memorandum in Support of Motion to Remand Action to State Court (Docket No. 7) and as Exhibit 1 to Docket No. 21; (2) the Affidavit of Daniel J. Dwyer in Support of Defendant's Motion to Transfer (Docket No. 12) ("Dwyer Aff."); (3) the Affidavit of Timothy Maloney (Docket No. 13) ("Maloney Aff."); (4) the Affidavit of Michael D. Healan (Docket No. 19) ("Healan Aff."); and (5) the Affidavit of Pedro T. Santos (Docket No. 20) ("Santos Aff.").

OsComp opened a small office in Houston, Texas in June 2011, and it subsequently registered to do business in Texas.  (Id.; Dwyer Aff. at Ex. 1).  Nevertheless, OsComp's operations remain concentrated in Massachusetts.  (Santos Aff. ¶ 21).  Moreover, as further detailed below, OsComp maintains that the operative facts relevant to its claims in this case occurred in Massachusetts and elsewhere outside of Texas, and that none of the individuals whom OsComp would call as witnesses in this case reside in or are otherwise located in Texas.  (See id. ¶¶ 2, 9-20, 23-25).  Rather, according to OsComp, most of its witnesses are located here in Massachusetts.  (See id. ¶¶ 2, 12, 23-24).

The defendant, Bakken, is a Texas limited liability company, which maintains a principal place of business in Harris County, Texas.  (Dwyer Aff. Ex. 2 at ¶ 2).  During the relevant time period, Bakken was engaged in a project involving the extraction of natural gas in the Williston Basin area of North Dakota.  (See Santos Aff. ¶ 5; Maloney Aff. ¶ 3).  Bakken asserts that various meetings and events relating to this litigation occurred in Texas, and that its witnesses are largely located in that state.  (See Maloney Aff. ¶¶ 2-6).

## The Contracts

In late 2010 and early 2011, OsComp and Bakken entered into two Purchase Order Contracts.  (Compl. ¶ 6; Compl. Exs. A & B).  Pursuant to the Contracts, OsComp agreed to provide Bakken with five natural gas compressors, along with related equipment and

-4-

services, in connection with Bakken's natural gas operations in or around the Williston Basin in North Dakota. (Santos Aff. ¶ 5; Maloney Aff. ¶ 3). Bakken agreed to pay OsComp a base price of $381,460 under the first Contract, and a base price of $1,837,640 under the second Contract. (Compl. ¶ 9; Compl. Ex. A at 1; Compl. Ex. B at 1). Additionally, to the extent the defendant requested maintenance services beyond those included in the base rate, Bakken agreed to pay OsComp for those services at the plaintiff's prevailing service rate. (Compl. ¶ 10; Compl. Ex. A at 15; Compl. Ex. B at 15). In this action, OsComp is seeking to recover at least $965,788 from Bakken for services that it claims to have provided pursuant to the parties' Contracts. (Santos Aff. ¶ 4).

The Contracts set forth various Terms and Conditions addressing such matters as payment terms and taxes, delays in delivery, regulatory compliance, and confidentiality. (See Compl. Ex. A at 17-19; Compl. Ex. B at 17-19). Significantly, paragraph 9 of the Terms and Conditions, entitled "DISPUTE RESOLUTION," provided that

> [t]his Agreement shall be governed by the laws of the Common-wealth of Massachusetts without respect to conflicts of law and may not be amended except in a writing signed by both parties. **[Bakken] hereby agrees to waive any right to a trial by jury and to accept venue in the courts of Middlesex County, Massachu-setts**. If prevailing, OsComp shall recover all of its costs and expenses, including its attorney fees. No liability of OsComp to [Bakken] shall exceed the sum of payments made by [Bakken] to OsComp, nor include any incidental, consequential or punitive damages.

(Compl. Ex. A at 18 ¶ 9; Compl. Ex. B at 18 ¶ 9) (emphasis added).  At issue is whether this provision constituted a waiver by Bakken of its right to remove this case from Middlesex Superior Court to federal court.

After entering into the Contracts with Bakken, OsComp took steps to carry out its obligations to provide Bakken with compressors and related equipment.  In particular, OsComp retained a number of subcontractors, located in various states throughout the country, to manufacture and fabricate parts for the compressor units.  (Santos Aff. ¶ 10; Maloney Aff. ¶ 3).  At least one those subcontractors, Natural Gas Services Group, Inc. ("NGSG"), maintains its headquarters in Midland, Texas.[2]  (Maloney Aff. ¶¶ 3, 6).  OsComp contends, however, that NGSG's compressor manufacturing facility is located in Oklahoma.  (Santos Aff. ¶¶ 9-10).  Another subcontractor, which OsComp retained to provide materials and parts for the compressors, was a Massachusetts company known as Northstar Industries ("Northstar").  (Id. ¶ 12).  As part of its claim for damages in this action, OsComp is seeking to recover amounts that were paid to Northstar for work performed in connection with the design and construction of the compressors.  (Id.).

### Failure of the Compressors

---

[2]  The parties dispute whether Cummins Southern Plains, LLC, an entity whose head-quarters are located in Arlington, Texas, served as one of OsComp's subcontractors.  According to Bakken, OsComp engaged Cummins Southern Plains to supply engines for the compressors. (Maloney Aff. ¶ 3).  However, OsComp asserts that Cummins Southern Plains, which entered into a contract with NGSG but not OsComp, "is simply the regional distributor of Cummins engines, and does no manufacturing."  (Santos Aff. ¶ 11).  According to OsComp, the relevant entity, "Cummins, Inc.," is headquartered in Indiana and manufactures engines in New Mexico.  (Id.). The plaintiff further contends that any witnesses from Cummins who may be needed to testify in this case "would most likely be its technical representatives, who are located in Indiana."  (Id.).

The Contracts required OsComp to design and build the compressors and related equipment based on specifications supplied by Bakken regarding the composition of the gas involved in Bakken's natural gas extraction project.  (Santos Aff. ¶ 6).  OsComp claims that it relied on Bakken to provide accurate information as to the composition of the gas to be handled by the compressors.  (Id.).  OsComp further claims that the information it received from Bakken was inaccurate.  (Id. ¶ 7).  As a result, the compressors allegedly failed to function properly and repeatedly sustained damage.  (Id. ¶ 8).

According to the plaintiff, OsComp made repairs to the damaged parts of the compressors.  (Id.).  It also made extensive alterations, and provided additional equipment so that the compressors could handle the type of gas involved in the Williston Basin project.  (Id.).  OsComp claims that it incurred substantial costs in connection with this work, and that it is entitled to recover such costs from Bakken under the terms of the parties' Contracts.  (Id.).

Bakken disputes that OsComp has any right to recover any costs or other amounts from it.  It contends that as a result of OsComp's own failure to fulfill its obligations to the defendant under the parties' Contracts, Bakken has sustained damages which exceed OsComp's alleged losses.  (Notice of Removal (Docket No. 1) at 3 n.1).  In particular, Bakken claims that it was damaged by OsComp's substantial delays and cost overruns, as well as by OsComp's failure to commission work on the fifth and final compressor more than six months after it was due to be delivered.  (See Dwyer Aff. Ex. 2 at ¶¶ 7-8).  As

described below, these assertions are the subject of a lawsuit which Bakken filed against

OsComp in Texas state court.

## The Parties' Litigation

In early 2012, the parties were engaged in communications regarding their dispute

over the alleged breaches of the Contracts.  (See Healan Aff. ¶¶ 3-5 and Exs. B & C

thereto).  Thus, on January 11, 2012, OsComp's counsel wrote a letter to Bakken's

counsel in which he proposed that the parties meet to discuss the possibility of settlement.

(Id. ¶ 3).  Bakken's counsel responded in a letter dated February 8, 2012.  (Id. ¶ 4).

Therein, Bakken's counsel agreed to discuss the potential resolution of the parties'

dispute, but only if OsComp were willing to pay Bakken for its alleged damages,

attorney's fees and expenses.  (Id. at Ex. C).  Bakken's counsel further informed

OsComp's attorney that if the requested amount "is not paid within 60 days of receipt of

this notice then I will advise my client that action may be instituted on those claims to

recover those amounts in a court."  (Id.).

The parties continued to discuss the possibility of settlement over the course of the

next several months.  (Id. ¶ 5).  However, throughout the course of their discussions,

Bakken's counsel failed to advise OsComp that Bakken had already filed a complaint

against OsComp in Texas state court (the "Texas Litigation") on about February 7, 2012,

a day before Bakken's response to OsComp's January 11, 2012 letter.  (Id.; Notice of

Removal ¶¶ 5, 6).

The parties' effort to resolve their dispute was unsuccessful, and on March 7, 2012, OsComp initiated the present action against Bakken in Middlesex Superior Court. (Compl. at 1).  By its complaint, OsComp alleges that Bakken failed to pay the amounts due to it under the terms of the parties' Contracts.  (See id. ¶¶ 30-33).  It has asserted claims against the defendant for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), return of equipment (Count III), violations of Mass. Gen. Laws ch. 93A (Count IV), and injunctive relief or relief under Mass. Gen. Laws ch. 93, § 42A (Count V).

On May 31, 2012, more than two months after OsComp brought its action against Bakken in Massachusetts state court, and more than three months after Bakken filed its lawsuit in Texas state court, Bakken served OsComp with its complaint in the Texas Litigation.  (Healan Aff. ¶ 6).  As described in that complaint, Bakken alleges, in essence, that OsComp breached its obligations under the parties' Contracts by failing to provide Bakken with the first four compressors on time and at the agreed upon cost, and by failing to commission work on the last compressor for more than six months after it was due to be delivered.  (See Dwyer Aff. at Ex. 2 ¶¶ 6-11).  Bakken's claims against OsComp consist of claims for breach of contract, money had and received, declaratory judgment, fraud, tortious interference with Bakken's business relationships, business disparagement, conversion, and violations of the Texas Theft Liability Act.  (Id. at Counts 1-8).

On June 6, 2012, Bakken removed OsComp's case from the state court to this court on the basis of diversity jurisdiction.  (Notice of Removal ¶ 7).  By the parties' present motions, OsComp is seeking an order remanding the matter to the Middlesex Superior Court and Bakken is seeking an order transferring the case to federal district court in Texas.

Additional factual details relevant to this court's analysis are set forth below where appropriate.

### III.   ANALYSIS – OSCOMP'S MOTION TO REMAND

In connection with its motion to remand, OsComp does not dispute that the requirements for establishing diversity jurisdiction have been met.  Rather, it argues that the matter must be remanded to state court pursuant to the dispute resolution clause contained in the parties' Contracts.  Specifically, OsComp argues that Bakken, by agreeing to "accept venue in the courts of Middlesex County, Massachusetts" where no federal court sits, waived its right to remove the case from Middlesex Superior Court to the federal District Court.  (Pl. Mem. (Docket No. 7) at 1).  Bakken argues that the Contracts' venue clause permits, but does not mandate venue in Middlesex County, and therefore does not constitute a waiver of its right of removal.  It further argues that to the extent the venue clause requires that the action be heard in Middlesex County, it is appropriate for the case to be heard here, in the federal district court which encompasses Middlesex County.  (Def. Opp. Mem. (Docket No. 9) at 1).  For the reasons that follow,

this court finds that Bakken's agreement did not waive its right to remove the case to federal court, and that therefore, no remand is warranted.

## A.    Standard of Review

"Federal courts have long enforced forum selection clauses as a matter of federal common law."[3]  Lambert v. Kysar, 983 F.2d 1110, 1116 (1st Cir. 1993).  Accordingly, under federal law, forum selection clauses such as the dispute resolution provision at issue in this case "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S. Ct. 1907, 1913, 32 L. Ed. 2d 513 (1972). In the instant case, Bakken does not argue that the forum selection clause of the parties' Contracts is unjust, unreasonable or invalid.  It argues instead that the forum selection provision does not preclude removal of the case from Middlesex Superior Court to this court.

---

[3]  Both parties have relied on federal common law, as opposed to state law, to support their arguments in connection with OsComp's motion to remand.  There do not appear to be any material discrepancies between Massachusetts law and federal common law regarding the validity and interpretation of forum selection clauses.  See, e.g., Jacobson v. Mailboxes Etc. U.S.A., 419 Mass. 572, 574-75, 646 N.E.2d 741, 743 (1995) (adopting federal common law rule that "forum selection clauses are valid and enforceable, except when it is shown that enforcement would be unreasonable"); Boland v. George S. May Int'l Co., 81 Mass. App. Ct. 817, 822-27, 969 N.E.2d 166, 171-74 (2012) (relying on both federal and state common law in order to interpret forum selection clause).  Therefore, it is appropriate for this court, like the parties, to rely on federal common law in order to resolve the present motion.  See Lambert v. Kysar, 983 F.2d 1110, 1116 (1st Cir. 1993) (finding it unnecessary to confront either the choice of law issue or "the daunting question whether forum selection clauses are to be treated as substantive or procedural for *Erie* purposes" where court could "discern no material discrepancy between Washington state law and federal law" regarding the validity and enforcement of forum selection clauses).

The federal courts are in agreement that "a forum selection clause may constitute a waiver of a defendant's right to remove an action to federal court."  See Global Satellite Commc'n Co. v. Starmill U.K. Ltd., 378 F.3d 1269, 1272 (11th Cir. 2004).  However, they are divided on the issue as to what standard to apply to determine whether a waiver has occurred, and the First Circuit has not resolved the issue.  Thus, some Circuits purport to require that a waiver of a right of removal must be "clear and unequivocal" while others rely on basic contract principles.  However, the purported standard applied does not appear to actually control the outcome.  For example, while the Fifth, Sixth, Eighth and Tenth Circuits have determined that a waiver of the right to removal must be "clear and  unequivocal," the manner in which the courts apply this standard is inconsistent.  See, e.g., EBI-Detroit, Inc. v. City of Detroit, 279 F. App'x 340, 347 (6th Cir. 2008) (noting that "any waiver of the right to remove must be 'clear and unequivocal,'" and finding that forum selection clause under which plaintiff agreed "to submit to the exclusive personal jurisdiction of, and not commence any action in other than, a competent State court in Michigan" was not a waiver because it did not mention "either removal or the party seeking to remove"); City of New Orleans v. Mun. Admin. Servs., Inc., 376 F.3d 501, 504-06 (5th Cir. 2004) (noting that waiver of removal rights must be "clear and unequivocal," but interpreting forum selection provision in accordance with ordinary contract principles and construing ambiguity in forum selection provision against the drafter); Milk 'N' More, Inc. v. Beavert, 963 F.2d 1342, 1346 (10th Cir. 1992) (noting that "a waiver of one's statutory right to remove a case from a state to a federal

court must be 'clear and unequivocal,'" and finding that contract clause stating that

"venue shall be proper under this agreement in Johnson County, Kansas" constituted a

waiver because the agreement "seems reasonably clear and the wording strongly points to

the state court of that county"); Weltman v. Silna, 879 F.2d 425, 427 (8th Cir. 1989)

(holding that "[w]aiver of the right to remove must be 'clear and unequivocal,'" and that

standard was not met by an agreement in which defendants consented to filing of suit in

state court, but which did not address removal).  Other courts, including the Third and

Eleventh Circuits, have expressly rejected the clear and unequivocal standard.  See

Snapper, Inc. v. Redan, 171 F.3d 1249, 1260-61 (11th Cir. 1999) ("We need not decide

whether the clause rises to the level of a clear and unequivocal waiver because we do not

agree that such a high standard is required or desirable."); Foster v. Chesapeake Ins. Co.,

Ltd., 933 F.2d 1207, 1217 n.15 (3d Cir. 1991) ("we do not see why contractual waivers

of the right to remove must be 'clear and unequivocal'").  Those courts rely on ordinary

principles of contract interpretation to determine whether there has been a contractual

waiver of the right to remove.  See Snapper, 171 F.3d at 1261-62 (ruling that "in the

context of removal based solely on diversity jurisdiction, ordinary contract principles

govern a contractual waiver[,]" and concluding that language of forum selection clause

constituted a waiver of the right to remove (footnote omitted)); Foster, 933 F.2d at 1216-

17 & n.15 (determining that "[a] court simply should determine contractual waiver of the

right to remove using the same benchmarks of construction and, if applicable, interpreta-

tion as it employs in resolving all preliminary contractual questions[,]" and concluding

that defendant had waived the right to remove "by consenting to '*submit*' to '*any court*' of competent jurisdiction '*at the request of the [plaintiff]*,*'* and to comply with all requirements necessary to give '*such court*' jurisdiction"). Accordingly, the question of waiver appears to depend more on the particular language used in the forum selection clause than on the standard applied by the court.

To date, the First Circuit has not decided whether contractual waivers of the statutory right of removal must be clear and unequivocal. See Autoridad de Energia Electrica de P.R. v. Ericsson Inc., 201 F.3d 15, 19 (1st Cir. 2000) ("Because we decide this as a matter of the language of the contract, we do not discuss [the defendant's] alternative argument that a waiver of a statutory right of removal must be 'clear and unequivocal.'" (footnote omitted)). This court also finds that it is not necessary to resolve that question here. Because the forum selection provision of the parties' Contracts did not preclude Bakken from removing the case to federal court under the less stringent contract interpretation standard, this court concludes that there was no waiver of the right of removal under either of the relevant standards.

### B.      Effect of the Forum Selection Clause on Bakken's Right to Remove

As described above, the relevant language of the parties' Contracts provides that "[Bakken] hereby agrees to waive any right to a trial by jury and to accept venue in the courts of Middlesex County, Massachusetts." (Compl. Ex. A at 18 ¶ 9; Compl. Ex. B at 18 ¶ 9). OsComp argues that Bakken waived its right of removal by agreeing to "accept

venue" in Middlesex County, where there is no federal court.[4]  (Pl. Mem. at 5).  For its

part, Bakken contends that where, as here, a forum selection clause is permissive rather

than mandatory, the clause cannot be interpreted as a waiver of the right of removal.  (See

Def. Opp. Mem. at 2-6).  Although this court finds that the fact that a forum selection

clause is "permissive" is not always dispositive of the waiver issue, in the instant case the

lack of any mandatory or exclusive language in the Contracts' choice of venue provision

renders remand inappropriate.

A "threshold question in interpreting a forum selection clause is whether the clause

at issue is permissive or mandatory."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d

10, 17 (1st Cir. 2009).  As the First Circuit has explained, "'[p]ermissive forum selection

clauses, often described as consent to jurisdiction clauses, authorize jurisdiction and

venue in a designated forum, but do not prohibit litigation elsewhere . . .  In contrast,

mandatory forum selection clauses contain clear language indicating that jurisdiction and

venue are appropriate exclusively in the designated forum.'"  Id. (quoting 14D Charles

---

[4]  This court recognizes that there are cases in which courts have found a waiver of the
right of removal where the forum selection clause at issue requires venue in a county where no
federal court sits.  See, e.g., Yakin v. Tyler Hill Corp., 566 F.3d 72, 76 (2d Cir. 2009) (finding
that obligatory venue clause calling for trial in Nassau County, New York constituted a waiver of
the right to remove due to the fact that no federal court sits in that county).  However, in light of
the fact that OsComp has moved its principal place of business from Cambridge, which is in
Middlesex County, to Boston, which is in Suffolk County, it is unclear whether Middlesex
Superior Court would be an appropriate court in which to resolve this dispute.  See Mass. Gen.
Laws ch. 223, § 1 ("A transitory action shall, except as otherwise provided, if any one of the
parties thereto lives in the commonwealth, be brought in the county where one of them lives or
has his usual place of business....").  In any event, this issue does not need to be resolved at this
time in light of this court's conclusion that the forum selection clause of the parties' Contracts is
not obligatory and does not preclude removal.

Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3803.1 (3d ed. 1998)) (additional quotations omitted).  Thus, when words such as "will" or "shall" are used in a forum selection clause, they typically "demonstrate [the] parties' exclusive commitment to the named forum."  <u>Provanzano v. Parker View Farm, Inc.</u>, 827 F. Supp. 2d 53, 60 (D. Mass. 2011).  Ultimately, however, "there is no general rule for forum selection clauses" and the determination as to whether a clause is mandatory or permissive must turn "on the specific language of the contract at issue."  <u>Rivera</u>, 575 F.3d at 17 (quotations, citation and footnote omitted).

Courts considering whether there has been a waiver of the right of removal often consider whether the forum selection clause at issue is mandatory or merely permissive. <u>See</u>, <u>e.g.</u>, <u>Excell, Inc. v. Sterling Boiler & Mech., Inc.</u>, 106 F.3d 318, 321 (10th Cir. 1997) ("Keeping in mind the mandatory/permissive dichotomy, and giving the language of the clause its plain meaning, we conclude the clause is mandatory and requires that any breach of contract action be brought and litigated in the District Court of El Paso County, Colorado."); <u>Wells Fargo Century, Inc. v. Brown</u>, 475 F. Supp. 2d 368, 371-72 (S.D.N.Y. 2007) (finding that forum selection clause in the parties' contract "is mandatory rather than permissive" and precluded defendants from removing case to federal court). Moreover, it appears that at least some courts have found the distinction to be dispositive of the waiver issue.  <u>See</u> <u>Collin Cnty. v. Siemens Bus. Servs., Inc.</u>, 250 F. App'x 45, 51 (5th Cir. 2007) (unpub. op.) ("contractual clauses purporting to waive federal jurisdiction must be mandatory and not merely permissive").  On the other hand, some courts have

concluded that a contract may be considered "permissive" in that it allows the plaintiff to select the court in which to bring suit, but "mandatory" as to the defendant because it requires the defendant's submission to the plaintiff's chosen forum. <u>Snapper</u>, 171 F.3d at 1262 n.24. Accordingly, the designation of the contract language as "mandatory" or "permissive" is not necessarily decisive of the question of waiver.

In the instant case, it is undisputed that the forum selection clause at issue contains no words such as "will" or "shall," and "is not 'mandatory' in the sense that it obligates the parties to the exclusive venue of Middlesex County." (Pl. Reply Mem. (Docket No. 17) at 1). In fact, the First Circuit has determined that a forum selection clause under which the parties "agree to submit to the jurisdiction of the courts" of a given forum is permissive in that it does not exclude jurisdiction in other courts. <u>See</u> <u>Autoridad de Energia Electrica</u>, 201 F.3d at 18-19. Nevertheless, OsComp contends that the forum selection clause of the parties' Contracts "is 'mandatory' in that it obligates [Bakken] to accept the Middlesex County venue once OsComp selects that venue." (Pl. Reply Mem. at 1-2). This argument is not compelling. Absent any mandatory or restrictive language specifically precluding removal or otherwise indicating that the courts of Middlesex County constitute the only appropriate venue in which to proceed with this litigation, a more persuasive reading of the Contract is that neither OsComp nor Bakken is obligated to pursue litigation in Middlesex County state courts. <u>Compare</u> <u>Yakin</u>, 566 F.3d at 76 (finding that forum selection clause providing that "the venue and place of trial . . . *shall* be in Nassau County, New York" contained obligatory venue language requiring trial in

Nassau County (emphasis added)); Global Satellite, 378 F.3d at 1272 ("The contract provision, 'Venue shall be in Broward County,' because it uses the imperative 'shall,' is most reasonably interpreted to mandate venue in Broward County, and Broward County alone.").

The defendant's agreement to "accept venue in the courts of Middlesex County, Massachusetts" is insufficient to demonstrate an intent to waive removal. See Priority Healthcare Corp. v. Chaudhuri, No. 6:08-cv-425-Orl-KRS, 2008 WL 2477623, at *2-3 (M.D. Fla. June 18, 2008) (finding that forum selection clause under which defendant agreed to "accept venue in Seminole County, Florida" lacked the type of restrictive language that other courts have relied on to find a waiver of removal rights). One definition of the word "accept" is "to regard as proper[.]" Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/accept. Thus, a reasonable interpretation of the forum selection clause is that Bakken agreed that venue is proper in the courts of Middlesex County. However, such an agreement is not equivalent to an agreement that an action must remain and be adjudicated in the courts of Middlesex County.[5] Compare Magness Oil Co. v. Piedmont Fields, LLC, No. 3:11-CV-03104, 2012 WL 1884902, at *4 (W.D. Ark. May 23, 2012) (finding that use of the mandatory word "shall" in forum selection clause providing that "[a]ny action shall be adjudicated in the

---

[5] This court rejects OsComp's argument that Bakken's agreement to "accept venue" in Middlesex County will be rendered meaningless if the matter is not remanded to the state court. (Pl. Mem. at 6). There is nothing unreasonable about interpreting the forum selection clause as an agreement that Middlesex Superior Court is an appropriate but not the required venue in which to litigate the case.

Circuit Court of Baxter County, Arkansas" clearly demonstrated, "not just that venue is proper in the Circuit Court of Baxter County, but that actions shall be adjudicated [there]"). Therefore, this court concludes that Bakken did not waive its right to remove the matter to federal court.

OsComp's reliance on Snapper, Inc. v. Redan, 171 F.3d 1249 (11th Cir. 1999), and iNet Directories, LLC v. Developershed, Inc., 394 F.3d 1081 (8th Cir. 2005), does not alter this court's conclusion. The forum selection clause at issue in Snapper provided in relevant part as follows:

> The Undersigned agrees that any legal action or proceeding with respect to this instrument may be brought in the courts of the State of Georgia or the United States District Court, Northern District of Georgia, Atlanta Division, all as [plaintiff] may elect. By execution of this instrument, the Undersigned hereby submits to each such jurisdiction, hereby expressly waiving whatever rights may correspond to it by reason of its present or future domicile.

Snapper, 171 F.3d at 1260. In connection with its determination that this language constituted a waiver of the right of removal under ordinary contract principles, the court found that the defendants' express waiver of "whatever rights" based on domicile obviously covered removal. Id. at 1262. It also found it significant that the clause provided "for the action to be brought in one of the fora 'all as [plaintiff] may elect.'" Id. As the court concluded, "[a]llowing removal from the forum that Snapper . . . did elect to the forum that Snapper specifically did not elect defies the express language of the contract and unjustifiably diminishes the importance of this specific language." Id. Thus, unlike the forum selection clause in the instant case, the contract in Snapper contained

specific language giving the plaintiff the right to choose the forum and waiving the

defendant's right of removal.

In iNet Directories, the relevant contract language provided that

> [t]he Parties hereby irrevocably waive any and all objections which
> any Party may now or hereafter have to the exercise of personal and
> subject matter jurisdiction by the federal or state courts in the State
> of Missouri and to the laying of venue of any such suit, action or
> proceeding brought in any such federal or state court in the State of
> Missouri.

394 F.3d at 1081.  The Eighth Circuit found that the parties' agreement to "waive any

objections to the laying of venue in any court in Missouri" meant that after the plaintiff

filed the action in Missouri state court, "the contract's forum selection clause

unambiguously prohibited [the defendant] from objecting to venue by removing the case

to federal court."  Id. at 1082.  Again, however, no such specific contract language is

present in the instant case.

Finally, the same result is reached even if the language of the parties' forum

selection clause is deemed to create an ambiguity as to whether Bakken agreed to waive

its right of removal once OsComp filed suit in state court in Middlesex County.  Under

such circumstances, the agreement must be construed against the drafter.  See LFC

Lessors, Inc. v. Pac. Sewer Maint. Corp., 739 F.2d 4, 7 (1st Cir. 1984) ("an ambiguous

contract should be construed against the drafting party"); Global Satellite, 378 F.3d at

1274 (construing ambiguous phrase set forth in parties' forum selection clause against the

drafter).  The language of the Contracts demonstrates that they were drafted by OsComp.

-20-

(See, e.g., Compl. Ex. A at 17 ¶ 1 (stating that "Agreements between the parties shall only be evidenced by the execution of [OsComp's] standard contract forms, or signed acceptance of OsComp's quotation as written.")).  If OsComp intended to litigate its disputes with Bakken only in the state court of Middlesex County, it could have stated its intention precisely.  Because it failed to do so, its motion to remand must be denied.[6]

## IV.   ANALYSIS – BAKKEN'S MOTION TO TRANSFER

In light of this court's conclusion that a remand is not warranted, this court next considers Bakken's motion to transfer venue to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. § 1404(a). OsComp does not dispute that the action could have been brought in the Southern District of Texas, but it argues that the forum selection clause of the parties' Contracts, as well as considerations of convenience and fairness, warrant the denial of Bakken's motion.  This court agrees for the reasons that follow.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of con-

---

[6]   In light of this court's conclusion that a remand is inappropriate because Bakken did not clearly waive its right to remove the case to federal court, it is unnecessary to address Bakken's argument that "the courts of Middlesex County, Massachusetts" should be interpreted to include the federal district court that encompasses Middlesex County, or its argument that Mass. Gen. Laws ch. 223, § 1 precludes OsComp from maintaining an action against it in state court in Middlesex County because OsComp is no longer located in that jurisdiction.  (See Def. Opp. Mem. at 6-8).

venience and fairness.'" Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st

Cir. 2009) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 108 S. Ct. 2239,

2244, 101 L. Ed. 2d 22 (1988)) (additional quotations and citation omitted).  In making

that determination, "the Court may consider a number of factors, including: 1) the plain-

tiff's choice of forum, 2) the convenience of the witnesses and location of documents,

3) the law to be applied, 4) the connection between the forum and the issues, 5) the state

or public interests at stake and 6) the relative convenience of the parties." World Energy

Alts., LLC v. Settlemyer Indus., Inc., 671 F. Supp. 2d 215, 218 (D. Mass. 2009).  Where

an identical action has been filed in another district court, the court also may consider

"the order in which the district court obtained jurisdiction." Coady v. Ashcraft & Gerel,

223 F.3d 1, 11 (1st Cir. 2000).  "Although the decision to transfer a case under § 1404

lies solely in the discretion of the trial court, there is a strong presumption in favor of the

plaintiff's choice of forum and the burden of proof rests with the party seeking transfer."

World Energy Alts., 671 F. Supp. 2d at 217.

### Application of the First-Filed Rule

Bakken argues that a transfer to the Southern District of Texas is appropriate

pursuant to the so-called "first-filed rule" because it filed the Texas Litigation before

OsComp initiated the instant action in Middlesex Superior Court.  (Def. Mem. (Docket

No. 11) at 9).  Under the first-filed rule, "[w]here identical actions are proceeding concur-

rently *in two federal courts*, entailing duplicative litigation and a waste of judicial

resources, the first filed action is generally preferred in a choice-of-venue decision."

<u>Veryfine Prods., Inc. v. Phlo Corp.</u>, 124 F. Supp. 2d 16, 21 (D. Mass. 2000) (emphasis added) (quotations and citation omitted).  <u>See</u> <u>also</u> <u>Coady</u>, 223 F.3d at 11 (describing first-filed rule as being implicated where actions are occurring "in two federal courts"). Here, however, the Texas Litigation is pending in state court, not federal court.  Consequently, the first-filed rule does not apply.

Bakken acknowledges the fact that no litigation between the parties is proceeding in Texas federal court.  (Def. Mem. at 9 n.2).  Nevertheless, it argues that "[t]his does not affect the logic or fairness of applying the first-filed rule to this motion[.]"  (<u>Id.</u>). According to Bakken, it is entitled to a Texas forum, "and once the case is transferred to the Southern District of Texas, the duplication of actions in Texas can be addressed in the state and federal courts in Texas or by agreement of the parties."  (<u>Id.</u>).  However, Bakken has not provided any authority for its novel suggestion that the first-filed rule is applicable under such circumstances.

Moreover, even if consideration of the first-filed rule were appropriate here, this court would decline to apply it.  Courts have recognized an exception to the first-filed rule where a party engages in "[p]rocedural fencing" in order to preempt the other party's potential lawsuit against it. <u>See</u> <u>McJunkin Corp. v. Cardinal Sys., Inc.</u>, 190 F. Supp. 2d 874, 879 (S.D. W. Va. 2002).  For example, adherence to the first-filed rule may be inappropriate "where a party has won the race to the courthouse by misleading his opponent into staying his hand in anticipation of negotiation; or by reacting to notice of imminent filing by literally sprinting to the courthouse the same day."  <u>Veryfine Prods.,</u>

124 F. Supp. 2d at 22.  In the instant case, the facts indicate that Bakken engaged in such conduct by silently filing suit just before responding to OsComp's offer to negotiate a settlement, and failing to advise OsComp of the suit while engaging in settlement negotiations.  Furthermore, Bakken withheld service of its complaint on OsComp, and otherwise failed to inform OsComp about the existence of its lawsuit, until after the parties' settlement negotiations broke down and OsComp filed and served the present action in Middlesex Superior Court.  (Healan Aff. ¶¶ 5-6).

Bakken's conduct appears to be an attempt to preempt any litigation that OsComp might have filed against it.  Indeed, Bakken has submitted no evidence, and has presented no arguments, to suggest otherwise.  As described above, the first-filed rule has no application in such a case.  Therefore, even if the rule were implicated here, this court would not factor it into the transfer analysis.

## Consideration of Relevant Factors

Having concluded that the first-filed rule is not applicable to this case, this court must determine whether the convenience of the parties and witnesses, and the interests of justice, favor a change of venue.  For the reasons that follow, this court finds that consideration of the relevant factors compels the conclusion that the motion to transfer venue must be denied.

## Plaintiff's Choice of Forum and
## Connection Between the Forum and the Litigation

-24-

As described above, there is a presumption in favor of the plaintiff's choice of forum.  See Coady, 223 F.3d at 11.  That presumption is particularly strong where the plaintiff chooses its home forum.  Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000).  "When a plaintiff chooses his home forum, the choice more likely represents considerations of convenience rather than vexation or harassment to the defendant, thus elevating the hurdle the defendant is required to clear to warrant transfer."  Id.  Because OsComp chose to sue in Massachusetts, where it maintains its principal place of business, its choice of forum weighs especially heavily in favor of keeping the litigation here.

Bakken argues that OsComp's chosen forum carries less weight because the operative facts occurred in Texas and North Dakota rather than in Massachusetts.  (Def. Mem. at 5, 8).  "Where the operative facts of the case have no material connection with [the] district [in which the case has been filed], plaintiff's choice of forum carries less weight."  United States ex rel. Ondis v. City of Woonsocket, R.I., 480 F. Supp. 2d 434, 436 (D. Mass. 2007) (quoting Goodman v. Schmalz, 80 F.R.D. 296, 302 (E.D.N.Y. 1978)).  However, the record reveals that various events giving rise to OsComp's claims occurred in Massachusetts, and that there is a significant connection between this forum and the issues.

Although the compressors at the heart of this case were installed at Bakken's project site in North Dakota, the evidence shows that all of OsComp's design and engineering work relating to that equipment took place in Massachusetts.  (Santos Aff.

¶ 16).  Accordingly, the parties held lengthy meetings at OsComp's offices in Massachu-

setts to establish the engineering and design criteria to be used in connection with the

construction of the compressors, and it was just before one of those meetings that Bakken

provided the plaintiff with specifications regarding the natural gas that would need to be

handled by the compressors.  (Id. ¶¶ 14-15).  As described above, OsComp claims that

Bakken's information about the composition of the gas was inaccurate and caused the

equipment failures which ultimately led to the parties' present dispute.  (See Compl.

¶¶ 25-27).  Accordingly, questions as to why the compressors failed and caused OsComp

to incur additional costs are directly linked to the events which took place in

Massachusetts.

      As further described above, OsComp initially retained a Massachusetts company

known as Northstar to fabricate materials and parts for the compressors, and both parties

attended meetings with Northstar, which were held in Massachusetts.  (Santos Aff. ¶ 12).

Among the matters addressed at those meetings was the design and engineering of the

compressors and the composition of the gas involved in Bakken's natural gas extraction

project.  (Id.).  By its claims in this action, OsComp is seeking to recover, among other

things, amounts that it paid to Northstar for its work in designing and constructing the

compressors.  (Id.).

      Finally, this lawsuit is necessarily connected to Massachusetts because it involves

Bakken's alleged failure to pay for services provided under its Contracts with a

Massachusetts-based company.  Accordingly, Bakken has not shown that there is no

material connection between the present forum and the litigation, or that OsComp's

choice of forum should not weigh heavily against a transfer of venue.

### Convenience of Parties and Witnesses

OsComp argues that Bakken cannot claim any inconvenience to itself from having

to litigate the case in Massachusetts because it specifically agreed to accept venue here

under the forum selection clause of the parties' Contracts.  (Pl. Opp. Mem. (Docket No.

18) at 11).  This court finds OsComp's argument persuasive.  The Supreme Court has

ruled that "[t]he presence of a forum-selection clause . . . will be a significant factor that

figures centrally in the district court's calculus" under 28 U.S.C. § 1404(a).  Stewart Org.,

487 U.S. at 29, 108 S. Ct. at 2244.  This is true even where the forum selection clause is

permissive.  See R.W. Granger & Sons, Inc. v. Rojac Co., Inc., 885 F. Supp. 319, 321,

324 (D. Mass. 1995) (giving "significant weight" to forum selection clauses under which

defendant agreed "to submit to the jurisdiction of the courts of the Commonwealth of

Massachusetts").  Because Bakken agreed that venue in Massachusetts Superior Court is

acceptable, it cannot argue that Massachusetts would be an inconvenient forum in which

to litigate the parties' dispute.  See Stone & Webster Constr., Inc. v. E-J Elec. Installation

Co., Civil Action No. H-06-2426, 2006 WL 2880453, at *3 (S.D. Tex. Oct. 6, 2006)

(finding that "[p]laintiff cannot be heard now to argue that New York is an inconvenient

forum to litigate this dispute" given that plaintiff entered into a forum selection clause

authorizing suit in the State of New York).  Thus, the convenience of the parties factor

weighs heavily in favor of OsComp's choice of forum.

This court also finds that no transfer is necessary for the convenience of the expected witnesses.  "The convenience of the witnesses is probably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C.A. § 1404(a)."  United States ex rel. Ondis, 480 F. Supp. 2d at 437 (quotations, citations and punctuation omitted).  In analyzing this factor, the court remains mindful that there is "a preference [for] live testimony over testimony by deposition." Kleinerman, 107 F. Supp. 2d at 125.

The plaintiff has identified seven expected witnesses who work and reside in Massachusetts.  Those witnesses include OsComp's CEO, Pedro Santos, who is expected to present testimony regarding discussions and negotiations between the parties, the design, engineering, manufacturing and delivery of the compressors, the gas specifica- tions provided by Bakken, and the additional services that were provided by OsComp during its efforts to repair the compressors, among other topics.  (See generally Santos Aff.).  They also include three employees of OsComp, who are expected to testify about such matters as the negotiations and discussions between the parties, the manufacture and inspection of the compressors, and OsComp's communications with one of its subcon- tractors, NGSG, regarding the manufacture and operation of the compressors.  (See Santos Aff. ¶¶ 23-24).

In addition to its employees, OsComp expects to call as witnesses three representa- tives of Northstar who are residents of Massachusetts.  (Pl. Opp. Mem. at 14).  Those witnesses are expected to provide testimony regarding meetings among OsComp, Bakken,

and Northstar, as well as testimony concerning the design of the compressors and the gas specifications provided by Bakken.  (Id.; see also Santos Aff. ¶ 12).  The only other non-party witnesses who OsComp expects to call are not located in either Massachusetts nor Texas.  (See Santos Aff. ¶¶ 11, 25).  Thus, OsComp does not intend to present testimony in support of its affirmative case from anyone located in Texas.

For its part, Bakken states that it intends to present testimony from three of its principals, Timothy Maloney, David Dimond and James Paul.  (Def. Mem. at 7).  Those individuals are expected to describe such matters as the business and science of natural gas processing, Bakken's business in the capture and transport of natural gas, OsComp's proposals to perform manufacturing work, the negotiations and formation of the parties' Contracts, the malfunction of the compressors and efforts to fix them, and Bakken's losses as a result of OsComp's alleged failure to perform its contractual obligations, among other subjects.  (Id.; see also Maloney Aff. ¶¶ 1-5).  Messrs. Maloney and Paul reside in Texas.  (Maloney Aff. ¶¶ 2, 5).  However, Mr. Dimond lives in Seattle, Washington.  (Id. ¶ 4).  Therefore, Mr. Dimond would be required to travel even if the case were transferred to Texas.

Bakken also intends to call three non-party witnesses from NGSG, Ed Evans, John Rowell and Greg Neihues, to discuss their efforts to make the compressors operate, and it has indicated that it may need to call a non-party witness from Cummins as well.  (Def. Mem. at 7-8).  According to Bakken, each of the NGSG employees is located in Texas, which is also where Cummins is located.  (Id.; see also Maloney Aff. ¶¶ 3, 6).  However,

OsComp contends that Mr. Evans is located in Oklahoma rather than in Texas.  (Santos Aff. ¶ 10).  It also contends that to the extent anyone from Cummins is needed to testify, such testimony would most likely come from one of Cummins' technical representatives, all of whom are located in Indiana.  (Id. ¶ 11).

Based on the parties' representations, a transfer of venue to the Southern District of Texas would not be more convenient for the identified witnesses.  As described above, the expected witnesses who can be found in either Massachusetts or Texas are nearly evenly divided between the two jurisdictions.  The same holds true even when only the non-party witnesses are considered and when it is assumed that Mr. Evans is located in Texas as Bakken asserts.  Moreover, neither of the parties has indicated that any of the key witnesses is unable or unwilling to travel outside his home jurisdiction in order to testify at trial.  "Based on the record before it, this court sees no meaningful basis to conclude that . . . some witnesses will be put out significantly more than others by traveling to a distant forum."  Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc., 56 F. Supp. 2d 134, 141-42 (D. Mass. 1999).

Bakken notes that the presence of an OsComp office in Houston, Texas would make it easier for OsComp's employees to travel to Texas to testify.  (See Def. Mem. at 8).  To the extent this would ease the burden on OsComp's witnesses, it is not sufficient to tip the balance in favor of a Texas forum.  As described above, OsComp's choice of forum is entitled to significant weight, particularly in light of the parties' election of Massachusetts in their forum selection clause.  Because the presence of an office in Texas

would not significantly relieve OsComp's witnesses of the inconvenience of having to travel half way across the county, this court finds that it is insufficient to outweigh the plaintiff's decision to file suit in Massachusetts. Accordingly, convenience considerations do not support a transfer of venue.

### Remaining Factors

The remaining factors that the court may consider include the location of documents, the law to be applied, and the state or public interests at stake. See World Energy Alts., 671 F. Supp. 2d at 218. To the extent these factors are relevant here, they are either too insignificant to outweigh the plaintiff's choice of forum or further support the denial of Bakken's motion to transfer venue.

Neither of the parties has addressed the location of documents, but Bakken notes that it may be necessary to examine the fifth, uncompleted compressor which, according to Bakken, still exists in parts at NGSG's facility in Texas. (Def. Mem. at 8; Maloney Aff. ¶ 7). OsComp insists that the physical condition of the fifth compressor is not at issue in this case because there is no dispute that the fifth compressor was never assembled, and the only dispute is whether Bakken is entitled to the return of its deposit for the unfinished equipment. (Pl. Opp. Mem. at 17). To the extent the physical condition of the fifth compressor has any relevance to the parties' contractual dispute, such evidence may be provided "by videotape or other such means." Fairview Mach. & Tool, 56 F. Supp. 2d at 141. In any event, the presence of the fifth compressor in Texas does not tip the balance in favor of transfer.

With respect to the law to be applied, there is no dispute that the parties' Contracts call for the application of Massachusetts law.  (See Compl. Ex. A at 18 ¶ 9; Compl. Ex. B at 18 ¶ 9).  As the courts have recognized, "there is an appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems . . . in law foreign to itself."  R.W. Granger & Sons, 885 F. Supp. at 324 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947)).  Accordingly, this factor provides further support for OsComp's choice of forum.

Finally, the parties have not identified any particular state or public interests at stake.  Because there does not appear to be any public interest that would apply to one state but not the other, this factor is neutral and does not support a transfer to the Southern District of Texas.

In short, Bakken has not persuaded this court that OsComp's choice of forum is substantially more inconvenient than the defendant's proposed alternative or that a transfer to the Southern District of Texas would not simply shift the burden from the defendant to the plaintiff.  Accordingly, this court concludes that OsComp's choice of Massachusetts as the forum for litigating this dispute is controlling, and Bakken's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is denied.

# V.   __CONCLUSION__

For all the reasons described herein, OsComp's "Motion to Remand Action to State Court" (Docket No. 6) and Bakken's "Motion to Transfer Pursuant to 28 U.S.C. 1404(a)" (Docket No. 10) are both DENIED.

    / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge